UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Susan Sherry Sabhari and
Ali Abdulla Sabhari,

      Plaintiffs,

v.

Mark Cangemi, District Director,
Immigration and Customs Enforcement,
Eduardo Aguirre, Jr., Director,
Citizenship & Immigration Services,
Thomas Ridge, Secretary, Department
of Homeland Security, Alberto R. Gonzales,
United States Attorney General and
Denise Frazier, District Director, Citizenship
and Immigration Services,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-1104 ADM/JSM

---

Herbert Igbanugo, Esq. and Riddhi Jani, Esq., Blackwell Igbanugo, Minneapolis, MN, on behalf of Plaintiffs.

Robyn Millenacker, Esq., Assistant U.S. Attorney, Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On April 15, 2005, oral argument before the undersigned United States District Judge was heard on Defendants' Motion for Summary Judgment [Docket No. 31]. In their Complaint [Docket No. 1], Ali Abdulla Sabhari ("Sabhari") and Susan Sherry Sabhari ("Sherry") (collectively, "Sabharis") allege that, under the Administrative Procedure Act ("APA"), the Immigration and Naturalization Service ("INS")[1] acted arbitrarily and capriciously in denying

---

[1] As of March 1, 2003, the Department of Homeland Security ("DHS") placed the INS's adjudication functions under the auspices of the DHS's Citizenship and Immigration Services ("CIS"). For clarity, the Court will continue to refer to the agency as the INS, since the

their petitions to adjust Sabhari's immigration status.[2] For the reasons set forth below, Defendants' Motion for Summary Judgment is denied and the case is remanded to the CIS for further review.

## II. BACKGROUND

**A.     Factual Background**

On November 25, 1993, Sabhari was admitted to the United States from Kuwait on a visitor visa that expired May 25, 1995. R. [Docket No. 36] at 917. At the time of his arrival, Sabhari was married to Kahdija Mirza Ali Mohammed ("Mohammed") and had four children, all of whom remained in Kuwait. R. at 1705. On June 18, 1995, Sabhari divorced Mohammed by proxy. R. at 826, 1462. Shortly thereafter, on July 14, 1995, Sabhari married Sherry in Minneapolis, Minnesota. R. at 748.

**1.     First Form I-130 Petition**

On July 31, 1995, Sherry filed a Form I-130 Alien Relative Visa Petition to adjust Sabhari's immigration status on the basis that they were husband and wife. R. at 913. Sabhari concurrently filed a Form I-485 Application to Register Permanent Residence or to Adjust Status. R. at 2373-76. After interviewing Sabhari and Sherry in October 1995, an INS Adjudications Officer requested an investigation into the validity of Sabhari's divorce with Mohammed. See Adjudications Field Manual ("AFM"), U.S. Dept. of Justice, Immigration and Naturalization Service, Chapter 10.5. At a January 1996 interview conducted by officials from

---

majority of pertinent activity at issue occurred under that agency.

[2] Although Susan Sherry changed her name upon marrying Ali Sabhari to Susan Sherry Sabhari, for the sake of clarity and brevity, the Court will refer to her as "Sherry."

the United States Embassy in Kuwait, Mohammed claimed Sabhari went to the United States to obtain permanent residency, that Mohammed and Sabhari had agreed to divorce until he obtained permanent residency status with the intent they would remarry, and that Sabhari was paying Sherry $350 per month.  R. at 1411.  Shortly thereafter, the INS Acting District Director issued a Notice of Intent to Deny ("NOID") the visa petition after finding the marriage to Sherry was not a bona fide marriage but was a fraud for immigration purposes.  R. at 735.

In response to the NOID, the Sabharis filed a March 26, 1996 affidavit in which Mohammed recanted her earlier statements regarding the validity of the divorce.  R. at 1177.  Mohammed claimed she did not understand the questions she was asked and that the American officials had recorded her responses falsely.  Id.  The Sabharis also submitted numerous affidavits attesting that their marriage was bona fide.  R. at 849-71.  In May 1996, the INS received unsolicited letters from Sabhari's sister, Horai Abdullah Saheri ("Saheri"), who lived in Kuwait, and Sabhari's brother, Matt Sapari ("Sapari"), an American citizen.  R. at 739, 1325.  Saheri's letter averred Sabhari married Sherry to obtain permanent residency and that he ultimately intended to divorce her and remarry Mohammed.  R. at 739.  Sapari's letter explained Sabhari intended to marry an American woman while leaving his wife and four children in Kuwait.  R. at 1325.  On June 14, 1996, Sapari called the INS to report Sabhari had threatened to "ruin him" if he disclosed Sabhari's intent to circumvent immigration law to the INS.  Sapari also reported that, on June 12, 1996, Sabhari had falsely testified under oath in a court dispute between the brothers that he had his green card.  R. at 1330.  Sapari subsequently provided copies of Sabhari's March 13, 1996 deposition and June 12, 1996 trial testimony in which Sabhari was asked whether he has a wife and children.  R. at 1307.  Although Sabhari had been

3

married to Sherry for nearly a year, Sabhari responded that he had a wife and children who lived in Kuwait. Id.

In July 1996, the INS received an unsolicited letter from Dana Sapari, Matt Sapari's wife, in which she stated Sabhari intended to marry an American wife to obtain a green card. R. at 1318. She claimed Mohammed had explained to her that, due to Sabhari's "Bedoun" heritage, their children would enjoy more opportunity in the United States than in Kuwait. R. at 227. Around the same time, the INS received a January 8, 1989 document giving Sabhari power of attorney over Mohammed's affairs. R. at 766. The power of attorney was apparently still in effect in 1996. R. at 199.

Based on this record, on August 28, 1996, the Acting District Director issued a second NOID finding Sabhari and Mohammed's divorce was a sham entered into to thwart immigration law. R. at 727. On September 27, 1996, the Sabharis filed for a Temporary Restraining Order, a Writ of Mandamus, and Declaratory and Injunctive Relief in United States District Court; however, the suit was dismissed on October 7, 1996 for failure to exhaust administrative remedies. R. at 1196, 1184. The INS issued a final decision denying the visa petition on December 17, 1996, after concluding the evidence of record supported a finding of a sham divorce leading to a sham marriage. R. at 1159-1165.

On December 20, 1996, the Sabhari's appealed the final decision to the Board of Immigration Appeals ("BIA"). R. at 1154-57. The BIA dismissed the appeal and denied a motion for remand on June 2, 1997, after finding the Sabharis had not met their burden of establishing their marriage was entered into in good faith by both parties. R. at 718.

The Sabharis responded by again filing suit in federal court seeking declaratory,

4

injunctive and mandamus relief.  R. at 710.  On July 2, 1997, while the federal suit was pending, the Acting District Director denied Sabhari's Form I-485 application for permanent residence status.  R. at 1842-43.  Since Sabhari's I-130 petition was denied, Sabhari was not eligible for status as a legal permanent resident purusant to 8 C.F.R. Part 245.1.  R. at 1843.  On July 28, 1997, the INS issued to Sabhari a Notice to Appear for Removal Proceedings.  R. at 2377-78.

On August 21, 1998, the Sabharis' complaint was dismissed by District Court Judge Donald D. Alsop.  Judge Alsop found the court lacked subject matter jurisdiction and, in the alternative, the "record contain[ed] ample evidence to support the INS's conclusion that the marriage was entered into for immigration purposes."  R. at 715.  On appeal, the Eighth Circuit found the APA provided subject matter jurisdiction to review the BIA's decision.  Sabhari v. Reno, 197 F.3d 938, 941-43 (8th Cir. 1999).  Although the Eighth Circuit noted "there is some evidence in the administrative record . . . to suggest that the Sabharis' marriage was bona fide" it ultimately concluded "the record before the BIA contained ample evidence upon which it could properly rely for its conclusion that Sabhari had failed to show that his marriage to Sherry was not entered for immigration purposes."  Id. at 944.  As a result, the Eighth Circuit affirmed the district court's order and dismissed the action with prejudice.  Id.

### 2. Second Form I-130 Petition

On August 22, 1997, while the lawsuit against the INS was pending before Judge Alsop, the Sabharis filed a second I-130 petition.  R. at 740-42.  No concurrent I-485 application was filed.  The only new evidence submitted was an affidavit of financial support and letters confirming Sherry's employment.  Compl. ¶ 42.  In May 1999, an Adjudications Officer, Tammie Henning ("Henning") briefly interviewed Sabhari and Sherry.  On May 22, 2000, the

INS District Director denied the petition. R. at 2290-95.

On June 14, 2000, the Sabharis filed both a Motion to Reconsider the District Director's denial and an Appeal of the Denial Decision to the BIA. R. at 26-27. The Motion to Reconsider was forwarded to the BIA for consideration since jurisdiction vested with it upon the Sabharis filing of the Notice of Appeal. R. at 26. On September 9, 2002, the BIA dismissed the appeal finding the denial was supported by the evidence in the record as a whole. Id.

### 3.  Asylum/Withholding of Removal Application

On December 8, 1998, Sabhari filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. R. at 2326. On July 19, 1999, an Immigration Judge ("IJ") denied the petition, finding: (1) Sabhari was removable as a non-immigrant alien who remained in the United States after the expiration of his visitor visa; (2) the application was untimely; and (3) Sabhari had "failed to introduce sufficient, concrete or direct evidence to show that he had a well-founded fear of persecution." R. at 2299-2322. The IJ ordered Sabhari be removed and deported from the United States to Kuwait. Id.

On July 19, 1999, Sabhari appealed the IJ's decision to the BIA, who affirmed without opinion on June 28, 2002. R. at 111-12, 2363-68. A Letter to Report for Removal on August 29, 2002 was subsequently issued; however, a Stay of Deportation was issued because Sabhari's Kuwaiti passport had expired. R. at 2369  The Stay, which continues to be in effect, requires Sabhari to report to the INS each month. Id.

In September 2002, the Sabharis filed a motion with the BIA arguing that new evidence required the second visa application be reopened, the decision denying the Application for Asylum be reopened, and Sabhari's status be adjusted pursuant to a third I-130 petition and a

6

second I-485 petition. Compl. Ex Y.  In a September 16, 2002 videotaped interview, Matt Sapari recanted the statements he made in letters to the INS in May 1996, June 1996 and June 1997 averring Sabhari's divorce of Mohammed and marriage to Sherry were shams.  Sapari Videotape [Docket No. 36].  He claimed his prior statements, and those of his then wife, were motivated by animosity in the civil suit in which he and Sabhari were then engaged.[3]  Id.  He also contended his sister, Saheri, made her statements because she was angry that Sapari was sending her money while Sabhari was not.  Id.  The BIA denied the Sabharis' Motion on February 10, 2003 after concluding Sapari's recantation was insufficient to overcome the evidence of fraud in the record.  R. at 2297-98.

The Sabharis subsequently filed a direct review of the INS's asylum decision in the Eighth Circuit.  On September 4, 2003, the Eighth Circuit found it did not have jurisdiction to review the BIA's asylum decision and affirmed the remainder of the agency's decision.  Sabhari v. Ashcroft, 73 Fed. Appx. 904, 904-05 (8th Cir. 2003).

    4.    **Third Form I-130 Petition**

On August 13, 2002, the Sabharis filed a third Form I-130 Alien Relative Visa Petition based on marriage.  R. at 31.  In September 2002, Sabhari also filed a second Form I-485.  R. at 2379.  The INS District Director issued a NOID on December 2, 2002 noting that, with the exception of medical records dated through July 2002 and statements from medical providers dated August 2002, all of the evidence submitted was dated from 2000 or earlier, which preceded the denial of the second I-130 petition.  R. at 117-95, 273.  The NOID concluded the evidence

---

[3] At some point between her July 1996 statements and Sapari's recantation, Matt and Dana Sapari were divorced.  Compl. ¶ 53.

did not establish Sabhari and Sherry's initial intent to enter into a bona fide marriage rather than a sham marriage for the purpose of circumventing immigration law. Id. The District Director also considered Sapari's September 16, 2002 videotaped recantation. He found Sapari's recounting of a telephone conversation in which Mohammed told him "she would do anything to get Ali back to Kuwait" directly contradicted Mohammed's March 1996 recantation in which she claimed she did not understand the meaning of the questions she was asked by American officials in January 1996. See R. at 576, 797. The District Director also relied upon statements recorded in Sherry's 1995 medical records which referenced her concerns regarding whether Sabhari was entering into their marriage to obtain permanent residency and noted Sabhari lied during his October 1995 INS interview. R. at 171-73.

Although the Sabharis submitted additional materials on December 17, 2002, the District Director issued a denial decision on February 18, 2003, concluding the evidence provided was not new, clear and convincing evidence of their intent at the inception of the marriage. R. at 4-24. The Sabharis did not appeal the decision to the BIA.

On March 3, 2004, the Sabharis filed the instant action in United States District Court. In support of their Complaint, the Sabharis submitted a November 11, 2003 affidavit in which Saheri recants her May 1996 statement that Sabhari and Sherry entered into a sham marriage for the purpose of obtaining a green card and that Sabhari intended to subsequently divorce Sherry and remarry Mohammed. She claims her earlier statements to the contrary were motivated by anger towards Sabhari for not sending her money to provide for herself and her children. Sahari Aff. (Compl. Ex. AA). Her brother Sapari had done so and she apparently expected the same of Sabhari. Id. In the early morning of March 31, 2005, the INS conducted a bed check at the

8

Sabharis' residence and found Sabhari and Sherry together.[4] Apr. 1, 2005 Letter (Millenacker Decl. [Docket No. 68] Ex. 1).

### III. DISCUSSION

**A. Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Judicial review of an INS decision denying a petition to change status is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. See Sabhari v. Reno, 197 F.3d 938, 942-43 (8th Cir. 1999). The APA states that an agency's decision, including its actions, findings and conclusions, should not be overturned unless it is unsupported by substantial

---

[4] To help determine whether a marriage is bona fide, the INS may conduct bed checks where agents will show up unannounced in the middle of the night or early morning to see whether the couple is living together. See April 1, 2005 Letter (Millenacker Decl. [Docket No. 68]).

evidence, or if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. See 5 U.S.C. § 706(2); United States v. Snoring Relief Labs, Inc., 210 F.3d 1081, 1085 (9th Cir. 2000). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Assn. v. State Farm Mutual, 463 U.S. 29, 43 (1983). While an agency must articulate a "rational connection between the facts found and the choice made," a court "will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 2285-86 (1974).

**B.      Res Judicata and Exhaustion of Administrative Remedies**

   **1.      I-130 Visa Petitions**

As a threshold matter, the Government contends this action should be barred by principles of res judicata. Defendants argue the validity of the Sabharis' Form I-130 petition has been adjudicated by the Eighth Circuit in Sabhari v. Reno, 197 F.3d 938 (8th Cir. 1999) and this final judgment on the merits bars further claims by parties based on the same cause of action.

Claims are precluded under res judicata if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. Montana v. United States, 404 U.S. 147, 153 (1979); Murphy v. Jones, 877 F.2d 682, 684 (8th Cir. 1999). Clearly the Eighth Circuit had jurisdiction under the APA to review whether the INS's denial of the Sabharis' Form I-130 petition was supported by the record as a whole. The Eighth Circuit reached the merits of the case and issued a final judgment that sufficient evidence existed to support the INS's determination. The same parties to that action are now before this Court again

challenging whether the INS's denial of the Sabharis' Form I-130 petition was arbitrary and capricious. Although the Sabharis argue subsequent recantations provide sufficient new evidence to reconsider the case, such evidence alone is not sufficient to overcome the strong preclusive effect of res judicata. See Ghaly v. Reno, 41 F. Supp. 2d 830, 832-33 (N.D. Ill. 1999). As a result, any further review of the first I-130 petition by this Court is precluded.

The preclusive effect of the Eighth Circuit's earlier judgment does not, however, attach to the Sabharis' second Form I-130 petition. The District Director's denial of the second I-130 petition was appealed to the BIA and is a separate proceeding that has not been adjudicated in federal court. See Ghaly v. Reno, 41 F. Supp. 2d at 832. By appealing the denial to the BIA, the Sabharis exhausted their administrative remedies. The BIA dismissed the Sabharis' appeal in September 2002 and denied the Sabharis' subsequent motion to reopen in February 2003. As a result, judicial review of the second I-130 petition is timely under the APA's six year statute of limitations. See 28 U.S.C. § 2401(a).

The Government also contends judicial review of the third I-130 visa petition is premature because the Sabharis failed to appeal the District Director's denial to the BIA. As a result, the Government argues the Sabharis have not exhausted their administrative remedies. Given the long and tortured procedural posture of the case, coupled with the BIA's consistent denials of the Sabharis' appeals, there is strong evidence such exhaustion would have been futile. However, it is unnecessary for the Court to resolve this issue since it clearly has subject matter jurisdiction to review the second Form I-130 petition and the issue of whether the INS correctly determined the Sabharis' marriage was a sham.

### 2. Asylum Petition

On April 7, 2005, Plaintiffs filed an Amended Complaint, alleging for the first time that the INS deprived Sabhari of due process and fairness in his removal proceedings by failing to disclose Matt Sapari was granted asylum in October 1997 "based on the same facts underlying Mr. Sabhari's asylum application." See Am. Compl. ¶ 87 [Docket No. 65]. Plaintiffs filed the Amended Complaint without leave from the Court or written consent by Defendants and after the March 6, 2005 deadline for non-dispositive motions. See Fed. R. Cv. P. 15(a). As a result, the Court finds Plaintiffs' Amended Complaint is untimely and the due process claim as it relates to Sabhari's asylum petition is not properly before the Court.

Even if the Complaint had been properly amended to add the claim, the Court finds the claim would be barred by the Eighth Circuit's opinion in Sabhari v. Ashcroft, 73 Fed. Appx. 904 (8th Cir. 2003). In that opinion, the Eighth Circuit reviewed the denial of Sabhari's asylum petition and found it did not have jurisdiction to review one of the grounds upon which it was rejected, untimeliness. Id. at 904, citing Ismailov v. Reno, 263 F.3d 851, 1855 (8th Cir. 2001); see 8 U.S.C. § 1158(a)(3). By statute, an asylum applicant must file his petition within one year of his arrival in the United States. 8 U.S.C. § 1158. Sabhari did not file his application until five years after he arrived in the United States and the IJ found there was no valid excuse or exceptional circumstances for the delay. See R. at 2299-2322. Assuming, arguendo, the INS concealed that Matt Sapari was granted asylum, Sabhari's petition remains untimely and this new information would not alter the denial decision.

### C. Procedural Claims

Plaintiffs allege the INS committed the following procedural errors and misinterpreted

12

their regulations in denying the Form I-130 petitions:

    **1.    INS Section 204(c)**

In their Amended Complaint, Plaintiffs added a claim that the INS based the denial of the I-130 petition on an erroneous application of INA § 204(c). Plaintiffs argue the denial is based on § 204(c)(1), which provides:

> . . . no petition shall be approved if (1) the alien has previously sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws . . . .

Plaintiffs argue § 204(c) does not prohibit approval of multiple visa petitions filed on behalf of the same beneficiary predicated on the same marriage (as opposed to a prior marriage previously determined to be fraudulent). See Matter of Isber, 20 I&N Dec. 676, 678 (BIA 1993). As previously discussed, Plaintiffs' Amended Complaint is untimely. Therefore the § 204(c) claim is not properly before the Court. However, Plaintiffs' argument fails to account for § 204(c)(2), which states no petition shall be approved if "the Attorney General has determined that the alien has attempted . . . to enter into a marriage for the purpose of evading the immigration laws." See also Lutwak v. United States, 344 U.S. 604, 610-13 (1953). Although the District Director and the BIA's denial do not state which provision of § 204(c) the denial rests on, § 204(c)(2) clearly provides authority for the denial.[5] Sabhari, 197 F.3d at 943-44. As a result, Plaintiffs' § 204(c) claim must be dismissed.

---

    [5] For the first time, in Plaintiffs' Response to Defendants' Motion for Summary Judgment, Plaintiffs argue the District Director's denial of the first visa pursuant to INS § 204(c) was erroneous. Such a claim is not properly before this Court since it was not pled in the Complaint, is barred by res judicata and is untimely under the APA's statute of limitations.

2.  **Second Form I-130 Petition Interview**

Plaintiffs argue the brief interview provided to the Sabharis on May 5, 1999 after they filed the second Form I-130 petition violated INS procedural requirements and did not afford them sufficient opportunity to show their marriage was bona fide. At the interview, the INS examiner, Henning, stated that the meeting may be premature since she had not reviewed the marriage petition. 5/5/99 Meeting Transcript (Compl. Ex. 1) at 17. Henning aked the Sabharis whether all information on record was correct and allowed them to provide any new information but did not ask many additional questions. Henning Decl. [Docket No. 55] at 24-26. Plaintiffs argue Henning violated the INS Service Field Manual, which instructs officers to refrain from commencing a meeting until after they have reviewed the file. They also claim the Legacy INS Examinations Handbook advises officers to ask a diverse group of personal questions. See INS Adj. Field Manual 15.4.

In connection with their third visa petition, Plaintiffs did not receive an interview at all.

Whether an interview is required depends on the type and timing of the application filed. Interviews are permissible but not required when evaluating an I-130 visa petition based on marriage. See Braimah v. INS, 1995 WL 390108, *2-3 (S.D.N.Y. July 3, 1995); 8 C.F.R. §§ 103.2(b)(9), 204.2; Operating Instruction 103.2(k); INS Adj. Field Manual 10.5. Conversely, with few exceptions, interviews are required when considering an I-485 application or when an I-130 petition and an I-485 application are filed concurrently. See Operating Instruction 245.2; 8 C.F.R. § 1245.6. Finally, an IJ, rather than the Adjudications or Examination section, has jurisdiction over applicants in removal proceedings who file an I-485 application. 8 C.F.R. § 245.2, 1003.14. As a result, such an applicant must prevail on a motion to reopen removal

proceedings before an I-485 interview may be held.  Id.

Plaintiffs received an interview in connection with their first I-130 visa petition because it was filed concurrently with an I-485 application.  The Sabharis filed a second I-130 visa petition in August 1997 but did not file a corresponding I-485 application.  As a result, INS was not required to provide them with an interview.  Henning nevertheless chose to provide a brief interview to confirm the accuracy of the information and inquire whether the Sabharis wished to augment the record.  Since the INS was not required to provide any interview, concerns over Henning's preparedness or the thoroughness of her questioning are without legal significance.  Finally, Plaintiffs filed a third I-130 visa petition in August 2002 but did not file a second I-485 application until September 2003.  Under 8 C.F.R. § 245.2(C)(1), the third I-130 and second I-485 were not considered to be filed concurrently.  Consequently, no interview was required.  Even if the forms were filed concurrently, Sabhari was subject to removal proceedings when he filed the second I-485 application.  As a result, he would have needed to prevail on his Motion to Reopen Removal Proceedings to obtain a non-discretionary interview, which he did not.  Therefore, Plaintiffs were not denied any opportunity to demonstrate their marriage was bona fide.

**D.**     **Substantive Issues**

    **1.**     **APA Review**

The Sabharis claim the INS decision to deny the I-130 petitions was arbitrary and capricious and contrary to law.  As a result, they claim "Defendants' practices, policies, conduct, and failures to act as alleged herein deprive plaintiffs their rights to have an immigrant visa

petition approved pursuant to INA § 201(b)."[6]  Compl. ¶ 76.  The factual and procedural background of the instant matter is conflicting and lengthy.  The voluminous record is rife with recantations, serious credibility issues, and evidentiary inconsistencies.  In the midst of this prolonged odyssey, Ali Sabhari and Susan Sherry have remained married for nearly a decade.  During that time, Sabhari has apparently been a law-abiding and productive member of U.S. society.  The Citizenship and Immigration Services ("CIS"), the successor to the INS, is charged with evaluating the validity of the Sabharis' marriage and has the resources and expertise to best make such a determination.  The Sabharis claim the INS, perhaps because of institutional inertia and reluctance to reverse course, has never taken a fresh look at its original conclusion that their marriage was entered into to evade immigration law.

As the INS repeatedly notes, "a marriage is a sham if the bride and groom did not intend to establish a life together at the time they were married." Horn Bu Roe v. INS, 771 F.2d 1328, 1331 (9th Cir. 1985) (citation omitted); see also Lutwak, 344 at 610-13.  However, the post-marriage conduct of the parties is relevant to the extent it bears upon their subjective state of mind at the time they were married. Lutwak, 344 U.S. at 610-13; Sang Chul Bark v. INS, 511 F.2d 1200, 1202 (9th Cir. 1975).  In the INS's December 2, 2002 NOID to deny the Sabharis' third I-130 Petition, the District Director stated "[t]he issue is whether you and Ali SABHARI intended to establish a life together <u>at the time you were married</u>, not if you are currently living together").  R. at 21 (citations omitted) (emphasis in original).  Although this is a correct statement of the law, nowhere does the NOID discuss what extent, if any, the Sabharis' ten year

---

[6] Although Plaintiffs' Complaint lists violation of INA § 201(b) and the APA as two separate causes of action, the APA serves as the vehicle for review of the alleged INA § 201(b) violation.

cohabitation evidences their intent at the time they entered into the marriage. In addition, since the Sabharis filed the instant action in this Court, Sabhari's sister has recanted her letter claiming his divorce from Mohammed and marriage to Sherry were a sham. With the exception of Sapari's now ex-wife, all of the persons who originally stated Sabhari's divorce and subsequent marriage was a sham currently aver the American marriage is bona fide. Furthermore, each recantation includes a facially plausible motivation for the earlier, now retracted statements. In fact, the Eighth Circuit noted, nearly three years prior to Sapari's recantation, that the motives of Sapari and his wife were suspect since the parties were engaged in a civil suit at the time. Sabhari, 197 F.3d at 944 n. 9. The Eighth Circuit primarily relied on the sister Saheri's letter, as the only statement which was without an apparent motive; however, that statement was also recently recanted. Id. at 944. Given these factors, the Court finds it is appropriate to remand the case to the CIS for a fresh and searching determination as to the validity of Sabhari's I-130 petition. In particular, the agency should consider: (1) whether the ten year length of the Sabharis' marriage evidences their intent upon entering into marriage;[7] (2) the impact of Saheri's recantation; and (3) the reasonableness of the motives provided for the initial statements of Mohammed, Sapari and Saheri. Given the Court's decision to remand this matter to the CIS for further review, the Sabharis' APA claim is dismissed without prejudice.

---

[7] Although the proof may not always lie in the pudding, the likelihood that Sabhari and Sherry entered into a "sham" marriage seems to decrease as the length of their marriage continues to grow. According to the U.S. Census Bureau, over 25 percent of marriages entered into between 1985 to 1989 (the most recent period for which data is available) fail within 10 years. See U.S. Census Bureau, Number, Timing, and Duration of Marriages and Divorces: 2001, Household Economic Studies, at 6, Table 2 (February 2005), available at http://www.census.gov/prod/2005 pubs/p70-97.pdf. It must be assumed that most of these marriages were not shams when initiated.

### 2. Constitutional Claims

Finally, Plaintiffs allege due process and equal protection violations. Compl. ¶¶ 81-82. The Eighth Circuit has held that an alien does not have a constitutionally protected right to an adjustment of status and cannot challenge the denial on constitutional due process principles. See Nativi-Gomez v. Ashcroft, 344 F.3d 805, 808 (8th Cir. 2003). Therefore, Plaintiffs' Fifth Amendment due process claim must fail.

Neither Plaintiffs' Complaint nor their briefs allege facts sufficient to support the assertion that "the statutory scheme produces arbitrary and capricious decision-making by federal officials as to when an immigrant visa will be approved," thereby violating the Equal Protection Clause of the Fourteenth Amendment. Compl. ¶ 82; see Berrum-Garcia v. Comfort, 390 F.3d 1158, 1161 (10th Cir. 2004); Lukowski v. INS, 279 F.3d 644, 648 (8th Cir. 2002) ("Nor does Congress violate the right to equal protection 'merely because the classifications made by its laws are imperfect . . .'"). As a result, Plaintiffs' equal protection claim must also be dismissed.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 31] is **DENIED**;

2. Plaintiffs' Complaint [Docket No. 1] is **DISMISSED WITHOUT PREJUDICE** as to the merits of their APA claims and **DISMISSED WITH PREJUDICE** as to all other claims;

3. Plaintiffs' Amended Complaint [Docket No. 65] is **DENIED** as untimely; and

4. The matter is remanded to the CIS to reassess the merits of Plaintiffs' I-130 Visa Petition based on the cumulative record before this Court, including sister Saheri's recantation.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　　s/Ann D. Montgomery　　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 10, 2005.